IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN WARD, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>   v.<br><br>AQUANTIA CORP., FARAJ AALAEI, LIP-BU TAN, DMITRY AKHANOV, BAMI BASTANI, KEN PELOWSKI, GEOFFREY G. RIBAR, SAM SRINIVASAN, and ANDERS SWAHN,<br><br>                 Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

      Plaintiff Brian Ward ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Aquantia Corp. ("Aquantia" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Aquantia and the Defendants.

**SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public shareholders of Aquantia against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Marvell Technology Group Ltd. ("Marvell," or "Parent") (the "Proposed Transaction").

2. On May 6, 2019, Aquantia entered into an Agreement and Plan of Merger (the "Merger Agreement") with Marvell. Pursuant to the Merger Agreement, Antigua Acquisition Corp. ("Merger Sub"), an indirect wholly owned subsidiary of Parent will merge with and into the Company, with Aquantia surviving as a privately held company (the "Merger").

3. Pursuant to the terms of the Merger Agreement, Marvell will acquire all outstanding common shares of Aquantia for $13.25 per share in an all-cash transaction valued at approximately $452 million (the "Merger Consideration"). The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Aquantia.

4. On May 29, 2019, in order to convince Aquantia's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Aquantia and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Aquantia

stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Aquantia common stock.

10. Defendant Aquantia is a Delaware corporation with its principal executive offices located at 91 E. Tasman Drive, Suite 100, San Diego, California 95134. The Company's common stock is traded on the NYSE under the symbol "AQ."

11. Defendant Faraj Aalaei ("Aalaei") is and has been the Company's Chief Executive Officer and a director of the Company at all times during the relevant time period.

12. Defendant Lip-Bu Tan ("Tan") is and has been a director of the Company at all times during the relevant time period.

13. Defendant Dmitry Akhanov ("Akhanov") is and has been a director of the Company at all times during the relevant time period.

14. Defendant Bami Bastani ("Bastani") is and has been a director of the Company at all times during the relevant time period.

15. Defendant Pelowski ("Pelowski") is and has been a director of the Company at all times during the relevant time period.

16. Defendant Geoffrey G. Ribar ("Ribar") is and has been a director of the Company at all times during the relevant time period.

17. Defendant Sam Srinivasan ("Srinivasan") is and has been a director of the Company at all times during the relevant time period.

18. Defendant Anders Swahn ("Swahn") is and has been a director of the Company at all relevant times during the relevant time period.

19. Defendants Aalaei, Tan, Akhanov, Bastani, Pelowski, Ribar, Srinivasan, and Swahn are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant Aquantia, are collectively referred to herein as "Defendants."

**CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of Aquantia (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

22. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of May 3, 2019, there were 35,532,571 Aquantia common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

23. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

24. Aquantia is a technology company that designs, develops, and markets advanced high-speed communication integrated circuits for Ethernet connectivity in the data center, enterprise infrastructure, access, and automotive markets worldwide. Its products include corporate data center products, enterprise infrastructure products, and access products, such as client connectivity and carrier access.

### The Company Announces the Proposed Transaction

25. On May 6, 2019, Aquantia issued a press release announcing the Proposed Transaction. The press release stated in part:

> SANTA CLARA, Calif. and SAN JOSE, Calif., May 6, 2019 /PRNewswire/ -- Marvell Technology Group Ltd. (NASDAQ: MRVL), a leader in infrastructure semiconductor solutions, and Aquantia, Corp. (NYSE: AQ), a leader in Multi-Gig Ethernet connectivity, today announced a definitive agreement, approved by the boards of directors of both companies, under which Marvell will acquire all outstanding shares of Aquantia common stock in exchange for consideration of $13.25 per share in cash.
>
> The acquisition of Aquantia complements Marvell's portfolio of copper and optical physical layer product offerings and extends its position in the Multi-Gig 2.5G/5G/10G Ethernet segments. In particular, Aquantia's innovative Multi-gig automotive PHYs, coupled with Marvell's industry-leading gigabit PHY and secure switch products, creates the broadest and most advanced range of high-speed in-car networking solutions in the world. This unique combination accelerates Marvell's vision for the future of automotive networking with speeds necessary to enable level 4 and 5 autonomous driving.
>
> As the automotive industry increasingly adopts Ethernet in-vehicle networks for mainstream models, the number of related ports is expected to grow dramatically

at a 62% annualized growth trajectory, from 53 million in 2018 to 367 million by 2022[1].

"Our acquisition of Aquantia will fuel Marvell's leadership in the transformation of the in-car network to high-speed Ethernet over the next decade," said Matt Murphy, president and CEO of Marvell. "At the same time, Aquantia extends our reach in the rapidly emerging Multi-Gig segment of network infrastructure and creates a leading end-to-end Ethernet connectivity portfolio."

"Marvell and Aquantia share a vision where the network – whether in an autonomous vehicle, an enterprise application or in cloud infrastructure – can seamlessly power the data economy," said Faraj Aalaei, chairman and CEO of Aquantia. "This is a fantastic opportunity as our customers will benefit from Marvell's global scale and expanding footprint in Multi-Gig network applications."

The transaction is expected to be immediately accretive to Marvell's non-GAAP earnings per share and generate significant annual run-rate synergies of $40 million to be realized within 12 months after the transaction closes.

**Transaction Structure and Terms**

Under the terms of the definitive agreement, Marvell will pay Aquantia's stockholders $13.25 per share in cash. This represents approximately $452 million in transaction value after adjusting for net cash on Aquantia's balance sheet. Marvell intends to finance the transaction with cash on hand and revolver borrowings. The transaction is not subject to any financing condition and is expected to close by the end of CY2019, subject to regulatory approval as well as other customary closing conditions, including the adoption by Aquantia's stockholders of the merger agreement.

In connection with the execution of the definitive agreement, certain stockholders of Aquantia, together holding approximately 17 percent of the outstanding shares of common stock of Aquantia, have agreed to vote their shares in favor of the transaction under a voting and support agreement.

26.     The Proposed Transaction is subject to approval by the shareholders of Aquantia, as well as regulatory approvals.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

27.     On May 29, 2019, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

28.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Management's Financial Projections**

29.     The Proxy Statement contains financial projections prepared by the Company's senior management in connection with the Proposed Transaction, but fails to provide material information concerning such.

30.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

31. In order to make management's financial projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

32. With respect to management's financial projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to: (i) EBITDAS; and (ii) Unlevered Free Cash Flows.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Barclays' Financial Opinion

33. The Proxy Statement contains the financial analyses and opinion of Barclays Capital Inc. ("Barclays") in connection with the Proposed Transaction, but fails to provide material information concerning such.

34. With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected after-tax unlevered free cash flows used by Barclays; (ii) the estimated terminal value of the Company; (iii) the basis for applying a range of NTM adjusted EBITDAS exit multiples of 9.0x to 11.0x; (iv) the inputs and assumptions underlying the calculation of the discount rate range of 14.5% to 16.0%; (v) the inputs and assumptions underlying the calculation of the range of perpetuity growth rates of 3.0% to 5.0%; (vi) net debt; and (vii) the fully diluted number of shares of the Company's common stock.

35. With respect to Barclays' *Equity Research Target Prices Review*, the Proxy Statement fails to disclose the actual price targets for shares of the Company's common stock and the sources that information was obtained from.

36. With respect to Barclays' *Transaction Premium Analysis*, the Proxy Statement fails to disclose the specific transactions chosen for Barclays' analysis, as well as the premiums paid in each of the transactions.

37. With respect to Barclays' *Selected Comparable Company Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the calculated earnings per share of each selected company; and (ii) the basis for selection of a multiple range of 15x to 20x.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Proxy Statement

is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Aquantia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Aquantia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

57. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 7, 2019                                        Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Brian Ward, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in AQ securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 06/05/2019

*[signature: Brian Ward]*

    Signature

**Exhibit A**

My transactions in Aquantia Corp. (AQ) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| AQ | 2/20/2018 | | P | 336 | $14.55 |
| AQ | 3/9/2018 | | P | 32 | $17.45 |
| AQ | 4/2/2018 | | P | 200 | $15.88 |